**Marli FREITAS, Plaintiff,**

v.

**GYPSUM FLOORS OF NEW YORK, INC. and Richard W. Phillips, Defendants.**

**No. 01 CIV. 7186(CM).**

United States District Court, S.D. New York.

July 30, 2002.

David M. Rosoff, Law Offices of Carton & Rosoff, PC, Harrison, NY, for Plaintiff.

James A. Rose, Certilman Balin Et Al., East Meadow, NY, for Defendants.

## ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

MCMAHON, District Judge.

Plaintiff Marli Freitas sues Defendants Gypsum Floors of New York, Inc. and Richard W. Phillips for violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, and New York State Human Rights Law § 296 *et. seq.* Plaintiff claims that she was subject to intentional discrimination and disparate treatment because of her national origin, and also that she was subjected to a hostile work environment. Plaintiff further claims that she suffered retaliation for opposing the alleged discrimination. Defendants deny these claims, and now move for summary judgment dismissing the complaint in its entirety, claiming that there is no triable material issue of fact and that as such they are entitled to judgment as a matter of law.

For the reasons stated below, defendants' motion is denied.

## FACTS PERTINENT TO THE MOTION

Defendant Gypsum Floors of New York, Inc. ("Gypsum") is a specialty concrete contractor in Westchester County, New York. Defendant Richard W. Phillips is the President of Gypsum.[1] Plaintiff Marli Freitas was hired on February 8, 1999, to perform "typical receptionist and administrative-type duties." S. Phillips Dep. at 19. Ms. Freitas is a Hispanic–American of Brazilian national origin. Pl.'s Rule 56.1 Stmt. ¶ 6.

*Plaintiff's Claims*

According to Ms. Freitas, she received only positive feedback in her first few months of employment at Gypsum, including a comment that "[she] was doing a great job." Freitas Dep. at 23–24. She

---

1. Gypsum occupies the same offices as New York Gypsum Floors, Inc., a separate company owned and headed by Stephen Phillips, the son of Defendant Richard W. Phillips. S. Phillips Dep. at 17–19. Although the companies engage in similar business, they have separate customer bases and payrolls. *Id.* at 18–20. Although this suit names only Gypsum Floors of New York and its President, Richard Phillips, as defendants, the incidents at issue occurred while Ms. Freitas was working for both Gypsum *and* New York Gypsum Floors. *Id.* For the purposes of this decision, references to Gypsum's office will be understood to include New York Gypsum Floors, Inc., as well.

claims that the final few months of her employment, however, were riddled with harassment that created a hostile work environment. *Id.* at 30. Ms. Freitas claims that it was her "daily routine" to receive harassing "[c]omments about [her] accent" from Stephen Phillips (see note 1 *supra*) and Eric Johnson, another Gypsum employee. *Id.* According to Ms. Freitas, a typical comment would be that "this is USA, we're not European company, you are not in Brazil." *Id.* While these were not daily incidents, Ms. Freitas claims that they occurred several times a week. *Id.*

Ms. Freitas claims that she was most consistently harassed regarding her duties related to answering the phones and making phone calls for Gypsum. *See id.* at 30–33. For example, Ms. Freitas claims that although Stephen Phillips told her that "the clients are very, very happy" with her polite phone manners, he told her that she was "not too Americanized," and that she had "to Americanize a little bit." *Id.* at 33. According to Ms. Freitas, she received two or three similar comments regarding her work being "too European" and in need of Americanization. *Id.* at 31–35. Furthermore, Ms. Freitas claims that she was often chastised when she relayed phone messages to Stephen Phillips, simply because he could not understand her accented English. *Id.* at 31–32.

Ms. Freitas also claims that she was singled out to carry boxes, clean toilets, and perform other menial tasks. *Id.* at 35–39. Although she was never told that she was to perform these tasks simply because she was Brazilian, Ms. Freitas notes that she was told to perform the duties "in a way that nobody [else at Gypsum]" was being told to do their duties. *Id.* at 37–38. She also notes that Eric Johnson and Stephen Phillips would "eat on [her] desk where [she] work[s]," even though there was a lunchroom elsewhere in the office. *Id.* at 38–39.

In addition to the claim that she was subjected to a hostile work environment, Ms. Freitas claims that the acts described above, along with other incidents (described below) amounted to intentional discrimination and disparate treatment on the basis of her Brazilian national origin. In addition to those claims, Ms. Freitas also brings claims of retaliation for opposing illegal discrimination at Gypsum.

The retaliation claim arises from a series of exchanges with Richard Phillips, during which he allegedly fired Ms. Freitas on three separate occasions. According to Ms. Freitas, at one point during her employment at Gypsum, Richard Phillips replaced her with another office worker. *Id.* at 41–42. Her replacement, Rose, only worked at Gypsum for a single day. *Id.* at 65. Ms. Freitas claims that during that one day, Richard repeatedly commented on how much happier he was now that Rose was performing Ms. Freitas' duties, and that there were no more problems in the office. *Id.* at 41–42. Ms. Freitas claims that Rose earned $5,000 more than she did, despite Rose's only responsibility being to answer the phones. *Id.* at 65–67. In fact, according to Ms. Freitas, Rose only lasted one day because "[she] didn't like the way they treat[ed Freitas]," and she worried that they would treat her the same way. *Id.* at 66. Ms. Freitas admits that she will "never forget" how Richard compared her several months of work to Rose's single day. *Id.*

Ms. Freitas claims that in retaliation for her complaints regarding Richard Phillips' replacing her, she was fired on other occasions. *Id.* at 43–44. Ms. Freitas claims that in either late July or early August of 1999, Richard told her at the end of the workday that a new worker was starting the following day, and that she would be

responsible for training the new worker in those tasks that Ms. Freitas performed at the time. *Id.* at 44–45. When Ms. Freitas asked Richard where this new worker would sit, she claims that he explained that the new worker would take over Ms. Freitas' desk. *Id.* at 45. Richard allegedly explained that he was "not happy and people still complain[ed] about [Ms. Freitas] on the phone." *Id.* at 46. Despite Ms. Freitas' claim that the new worker, Ida, was an inferior worker, it was Ms. Freitas who was asked to leave Gypsum for the third time in 6 months (the first time being in May, the second was directly before Rose was hired). *Id.* at 62, 67. *See also id.* at 63 (May firing); *Id.* at 66 (Rose).

Ms. Freitas claims that in late August, Richard Phillips fired her, but that that other Gypsum workers asked her to stay. *See* Freitas Aff. ¶¶ 52–68. Nonetheless, she was told "don't worry, go home." *Id.* at ¶ 68.

It is undisputed that Ms. Freitas subsequently sent two letters to Gypsum, dated September 2, 1999 and 7, 1999, respectively. *See* Def.'s Rule 56.1 Stmt. ¶ 4. *See also* Freitas Aff. Exhs. D, E. In the September 2nd letter, addressed to Stephen Phillips, Ms. Freitas writes, "[a]s per our last week conversation, we agreed that from August 20 trough [sic] September 3, I would take time off." Freitas Aff. Exh. D. In the September 7th letter, also addressed to Stephen Phillips, Ms. Freitas writes, "[a]s per Mr. Richard W. Phillips decision on August 25, 1999, I am filling [sic] for unemployment started [sic] September 7, 1999." Freitas Aff. Exh. E.

*Defendants' Claims*

Defendants Gypsum and Richard W. Phillips deny all claims of discrimination, retaliation, and maintaining a hostile work environment. Specifically, they claim the their employment of Ms. Freitas was riddled with problems. Defendants claim that Plaintiff's work was "extremely weak," and reflected deficiencies in her work and communication skills. S. Phillips Aff. ¶¶ 7–9. They point to the errors in the September 1999 letters as examples of the poor grammar and spelling they say plagued the communications that Ms. Freitas composed while at Gypsum. *Id.* at ¶ 13. Defendants claim that they received complaints regarding Plaintiff's communication skills from their clients. *Id.* at ¶ 12. Defendants claim that Ms. Freitas was not in fact fired, but rather took a voluntary leave of absence from which she never returned. *Id.* at ¶ 15.

## DISCUSSION

Summary judgment is appropriate where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. *See* Fed. R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A genuine issue for trial exists if, based on the record as a whole, a reasonable jury could find in favor of the non-movant. *See Liberty Lobby,* 477 U.S. at 248, 106 S.Ct. 2505. In making its determination, the court must resolve all ambiguities and draw all reasonable inferences in favor of the non-movant. *See id.* at 255, 106 S.Ct. 2505. To defeat summary judgment, the non-moving party must go beyond the pleadings and "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). When opposing a motion for summary judgment, it is not sufficient for the non-moving party to present evidence that is conclusory or speculative, with no basis in fact. *See Liberty Lobby,* 477 U.S. at 249–50, 106 S.Ct. 2505.

It is clear that at the very least there are several material facts in dispute re-

garding the reasons for Ms. Freitas' termination. While Ms. Freitas claims that her termination was related to her accent and her national origin, the Defendants instead argue that they were simply making a business decision with an eye to satisfying their clients, who they claim had complained about Ms. Freitas's accent. Ms. Freitas in turn argues that Defendants cannot produce evidence of any client complaints regarding her work at Gypsum. Furthermore, and more fundamentally, there is an issue of fact as to whether Ms. Freitas was actually terminated by the Defendants, or whether she left by her own choice.

Given these and other material facts in dispute, summary judgment is inappropriate at this time. Insofar as facts adduced at trial might be insufficient to support some or all of plaintiff's federal and state law claims, the Court will address those issues at the appropriate time.

For the foregoing reasons, Defendants motion for summary judgment is DENIED.

This constitutes the decision and order of the Court.